1 | Edwin F. McPherson – State Bar No. 106084
     emcpherson@m-klaw.com
2 | Tracy B. Rane – State Bar No. 192959
     trane@m-klaw.com
3 | **McPHERSON & ASSOCIATES**
1801 Century Park East
4 | 24th Floor
Los Angeles, CA 90067
5 | Tel:(310)553-8833
Fax:(310)553-9233
6 |
7 | Attorneys for Plaintiff Verne Troyer

*(handwritten left margin: "Given Dismissal of Does" / "Given Copyright Form")*

FILED
2008 JUL 31 PM 2:41
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY ___

8 |
9 | # UNITED STATES DISTRICT COURT
10 | # FOR THE CENTRAL DISTRICT OF CALIFORNIA
11 |

CV08-05042 R (MANx)

| | |
|---|---|
| VERNE TROYER, an individual, | CASE NO. |
|                 Plaintiff, | **COMPLAINT FOR:** |
|             v. | 1. **COPYRIGHT INFRINGEMENT** |
| RANAE SHRIDER, an individual; | 2. **VIOLATION OF LANHAM ACT** |
| HOLLY BANNON, an individual; | 3. **FRAUD** |
| OKORIE OKOROCHA, an individual; | 4. **INVASION OF PRIVACY** |
| TWIN PALMS, an unknown business | 5. **VIOLATION OF RIGHT OF PUBLICITY** |
| entity; and DOES 1-20, inclusive, | 6. **MISAPPROPRIATION OF NAME, VOICE, AND LIKENESS (C.C. §3344)** |
|             Defendants. | 7. **UNFAIR COMPETITION** |
| | 8. **ACCOUNTING** |
| | 9. **PRELIMINARY AND PERMANENT INJUNCTION** |
| | 10. **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS** |
| | 11. **BATTERY** |
| | 12. **NEGLIGENCE** |
| | **DEMAND FOR JURY TRIAL** |

Plaintiff VERNE TROYER (hereinafter "Plaintiff") complains and alleges as follows:

///
///

– 1 –

Complaint

Dockets.Justia.com

## ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

## INTRODUCTION

1.     This lawsuit concerns perhaps the most flagrant violation of an individual's personal privacy rights and other rights imaginable, to wit: the complete betrayal (of Plaintiff) by a trusted loved one (Ranae Shrider), who persuaded him to agree to videotape their most intimate moments, with the sole and exclusive intent to "sell him out," by leaking a portion of the videotape (hereinafter the "Videotape") to a tabloid internet website as a trailer for the full Videotape, and then to attempt to sell the full Videotape to the highest bidder. It is imperative that Plaintiff stop Shrider from exploiting him by selling the Videotape, stop her from making money from the Videotape, and stop everyone else from disseminating the Videotape.

## PARTIES

2.     Plaintiff is, and at all times herein mentioned was, an individual, residing in the State of California, County of Los Angeles. Plaintiff is best known as the actor who played the character "Mini Me" in the Austin Powers motion pictures.

3.     Plaintiff is informed and believes and, based upon such information and belief, alleges that Defendant Ranae Shrider (hereinafter "Schriber") is, and at all times herein mentioned was, an individual, residing in the State of California, County of Los Angeles.

4.     Plaintiff is informed and believes and, based upon such information and belief, alleges that Defendant Holly Bannon (hereinafter "Bannon") is, and at all times herein mentioned was, an individual, residing in the State of California, County of Los Angeles. Plaintiff is further informed and believes and, based upon such information and belief, alleges that Bannon is acting as a broker to exploit the Videotape.

5.     Plaintiff is informed and believes and, based upon such information and belief, alleges that Defendant Okorie Okorocha (hereinafter "Okorocha") is, and at all times herein mentioned was, an individual, residing in the State of California, County of

Los Angeles. Plaintiff is informed and believes and, based upon such information and belief, alleges that Okorocha is acting as a broker to exploit the Videotape.

6.     Plaintiff is informed and believes and, based upon such information and belief, alleges that Defendant Twin Palms (hereinafter "Twin Palms") is, and at all times herein mentioned was, an unknown business entity, organized and existing under the laws of the United States, doing business in the State of California, County of Los Angeles. Plaintiff is informed and believes and, based upon such information and belief, alleges that Twin Palms intends to broadcast, distribute, or otherwise disseminate the Videotape.

7.     Plaintiff is informed and believes and, based upon such information and belief, alleges that DOES 1 through 10 are, and at all times herein mentioned were, corporations, partnerships, or other business entities, which were and are legally responsible and liable for the acts, omissions, and events referred to in this Complaint.

8.     Plaintiff is informed and believes and, based upon such information and belief, alleges that DOES 11 through 20 are, and at all times herein mentioned were, individuals, who were and are legally responsible and liable for the acts, omissions, and events referred to in this Complaint.

9.     Plaintiff is ignorant of the true names and capacities of Defendants sued herein as DOES 1 through 20, inclusive, and therefore sues said Defendants under such fictitious names. Plaintiff will seek leave to amend this Complaint to allege their true names and capacities when the same have been ascertained.

10.     Plaintiff is informed and believes and, based on such information and belief, alleges that Defendants, and each of them, are, and at all times herein mentioned were, the agents, employees, partners, joint-venturers, co-conspirators, owners, principals, and employers of the remaining Defendants, and each of them, and are, and at all times herein mentioned were, acting within the course and scope of that agency, employment, partnership, conspiracy, ownership, or joint-venture. Plaintiff is further informed and believes and, based upon such information and belief, alleges that the acts and conduct

– 3 –

1  herein alleged of each such Defendant were known to, authorized by, and/or ratified by
2  the other Defendants, and each of them.

3
4  ## JURISDICTION AND VENUE

5  11.  This is an action for infringement under the Copyright laws of the United
6  States and for a violation of the Lanham Act.  Jurisdiction is conferred upon this Court
7  pursuant to 17 U.S.C. Section 101, et seq., 28 U.S.C. Section 1331, 28 U.S.C. Section
8  1332, 28 U.S.C. Section 1338, and pursuant to the supplemental, ancillary, and/or
9  pendant jurisdiction of this Court.

10  12.  Venue is proper in this District pursuant to 28 U.S.C. Section 1391(b) and
11  1400.

12
13  ## GENERAL BACKGROUND

14  13.  Within the last year, at the insistence of Shrider, Plaintiff's girlfriend at the
15  time, Plaintiff created and produced a videotape depicting Shrider and him engaged in
16  various explicit sexual and intimate relations together (hereinafter the "Videotape").
17  Plaintiff is readily identifiable on the Videotape.

18  14.  The Videotape was never intended by Plaintiff to be shown to the public,
19  and was always intended exclusively for Plaintiff's own personal, private use.

20  15.  On or about June 25, 2008, Plaintiff was advised that one or more copies of
21  the Videotape had somehow been obtained by TMZ Productions, Inc. (hereinafter
22  "TMZ"), and that TMZ was advertising and displaying a portion the Videotape on the
23  front page of its website, TMZ.com, throughout the world, and on its television show.

24  16.  Shrider telephoned Plaintiff in tears, expressing her absolute horror that a
25  portion of the Videotape was being broadcast on the internet, and advised Plaintiff that
26  the Videotape must have been stolen from their house.  She then gave interviews to any
27  news agency and television outlet that would listen to her, claiming that: (a) she had no
28  idea that Plaintiff had filmed her and him having sex; (b) she had no idea that the

-4-

1 | Videotape existed; and (3) she had no idea how the Videotape had "gotten out."

2 |     17. Plaintiff, persuaded by Shrider's performance, sued TMZ (and others)
3 | (hereinafter the "Original Defendants") in Case No. CV 08-04233 PSG, assuming that
4 | the Original Defendants had received the Videotape from the individuals who stole it
5 | from Plaintiff's home.

6 |     18. After Plaintiff sought and received a Temporary Restraining Order against
7 | all of the Original Defendants, TMZ submitted a Declaration from Shrider, under oath,
8 | under penalty of perjury, indicating that (a) it was not Plaintiff that had filmed them
9 | having sex; it was her; (b) she used her own camera and equipment; (c) she therefore co-
10 | owned (with Plaintiff) the copyright in and to the Videotape; and (d) she was the one that
11 | brought the Videotape to TMZ, and granted TMZ a license to display a portion of the
12 | Videotape (presumably as a trailer for the entire Videotape, which she apparently
13 | intended to sell from the outset).

14 |     19. Plaintiff ultimately obtained a Permanent Injunction against Blatt and Sugar
15 | DVD, and dismissed TMZ pursuant to a settlement agreement that also restricted TMZ's
16 | broadcast of the Videotape.

17 |

18 | **FIRST CLAIM FOR RELIEF**

19 | **(For Copyright Infringement – Against All Defendants Except Ranae Shrider)**

20 |     20. Plaintiff adopts, realleges, and by this reference incorporates, Paragraphs 1
21 | through 19, inclusive, hereinabove.

22 |     21. Plaintiff is, and at all times herein mentioned was, the owner of all right,
23 | title and interest in and to the Videotape, including any and all of the images and sound
24 | derived therefrom, and is, and at all times mentioned was, entitled to the immediate and
25 | exclusive possession of the Videotape, and all of its derivative forms, including copies
26 | made therefrom.

27 |     22. Since the date of the Videotape's creation, Plaintiff has never transferred or
28 | conveyed any rights whatsoever with respect to the Videotape to any third person for any

1 | purpose.

2 |     23. Because Plaintiff does not have current possession of the Videotape, a
3 | sound recording of the same, or any still photographs from the Videotape, it was not
4 | possible to register the Videotape with the Register of Copyrights prior to filing this
5 | action.

6 |     24. Plaintiff has subpoenaed a copy of the Videotape from Shrider; however,
7 | she failed to respond to that subpoena, other than by hiring her own attorney to challenge
8 | the subpoena and to make absurd claims against Plaintiff, and she has not turned over the
9 | Videotape, any copies thereof, any portions thereof, or any still photographs therefrom,
10 | to Plaintiff. As soon as Plaintiff obtains possession of a copy of the Videotape, he will
11 | immediately register the Videotape with the Register of Copyrights.

12 |     25. Plaintiff is informed and believes and, based upon such information and
13 | belief, alleges that Defendants, and each of them, knowing that they have no right to do
14 | so, have made copies of the Videotape, and are in the process of attempting to distribute
15 | the Videotape, in violation of the Copyright Act, as well as constituting wilful copyright
16 | infringement within the meaning of 17 U.S.C. Section 504(c)(2)

17 |     26. As a direct and proximate result of the Defendants' infringement of
18 | Plaintiff's copyright in the Videotape, as alleged herein, Plaintiff has been damaged in an
19 | amount that has yet to be ascertained, including consequential and incidental damages,
20 | but which is at least Twenty Million Dollars ($20,000,000), together with interest
21 | thereon at the legal rate. When Plaintiff ascertains the exact amount of said damages, he
22 | will seek leave of Court to amend this Complaint to set forth said amount.

23 |     27. In accordance with 17 U.S.C. Section 504, as a further direct and proximate
24 | result of the foregoing copyright infringement by Defendants, and each of them, Plaintiff
25 | is also entitled to recover all profits earned by Defendants, and each of them, that are
26 | attributable to the infringement of the copyright of the Videotape, which profits Plaintiff
27 | expects to be in excess of Twenty Million Dollars ($20,000,000.00).
28 | ///

28.   As a further direct and proximate result of the foregoing copyright infringement by Defendants, and each of them, Plaintiff has been compelled to retain the services of an attorney in order to prosecute his rights under the Copyright Act. As a result, Plaintiff has incurred and will continue to incur substantial attorneys' fees. In accordance with 17 U.S.C. Section 505, Plaintiff is entitled to an award of his reasonable attorneys' fees.

29.   In accordance with 17 U.S.C. Section 504(c)(2), as a further direct and proximate result of Defendant's wilful acts of copyright infringement, Plaintiff is alternatively entitled to an award of the maximum statutory damages under that Section, in the sum of One Hundred Fifty Thousand Dollars ($150,000.00) for each act of infringement.

## SECOND CLAIM FOR RELIEF

### (For Violation of Lanham Act – Against All Defendants)

30.   Plaintiff adopts, realleges, and by this reference incorporates, Paragraphs 1 through 19, inclusive, hereinabove.

31.   The use and dissemination by Defendants, and each of them, along with their implied representation that they have the rights to own, copy, disseminate, and distribute the Videotape, constitute a willful and deliberate false designation of origin and a false representation, and are likely to cause confusion, mistake, or deception by inducing the impression among purchasers, potential purchasers, and the public in general that the dissemination of the Videotape was and is in some manner approved, licensed, or sponsored by Plaintiff.

32.   Defendants, and each of them, by engaging in the foregoing acts, among others, have violated the Lanham Act, 15 U.S.C. Section 1125(a).

33.   As a direct and proximate result of the aforementioned acts by Shrider, as alleged herein, Plaintiff has been damaged in an amount that has yet to be ascertained, including consequential and incidental damages, but which is at least Twenty Million

Dollars ($20,000,000), together with interest thereon at the legal rate. When Plaintiff ascertains the exact amount of said damages, he will seek leave of Court to amend this Complaint to set forth said amount.

## THIRD CLAIM FOR RELIEF

### (For Fraud – Against Defendant Shrider Only)

34.    Plaintiff adopts, realleges, and by this reference incorporates, Paragraphs 1 through 19, inclusive, hereinabove.

35.    In or about 2008, Defendant Shrider asked Plaintiff, her then boyfriend, for his consent to videotape their intimate sexual relations. She represented to him, at the time, that the Videotape would be for their own, very private use, and that she would not release or show the Videotape to any third party.

36.    Thereafter, when TMZ broadcast a portion of the Videotape on its website, Shrider represented to Plaintiff that she was shocked by the broadcast and shocked that the Videotape had "gotten out." She also represented to Plaintiff that the Videotape was, or must have been, stolen from their house.

37.    The true facts were that Shrider had no intention of keeping the Videotape private and, from the outset, intended to take unfair advantage of Plaintiff by trading on his celebrity, and selling the Videotape to the highest bidder.

38.    In addition, there was no such theft from the house. Shrider took the Videotape directly to TMZ, and gave TMZ permission to broadcast a portion of the Videotape. She did this so that she could have TMZ release, in essence, a trailer or preview of the full Videotape, and therefore enhance her ability to make a tremendous profit from the sales of the full Videotape.

39.    At the time that Shrider made such fraudulent misrepresentations, Plaintiff was ignorant of Shrider's secret intentions.

40.    Plaintiff, in the exercise of reasonable diligence, could not have discovered Defendants' secret intentions, as aforementioned.

1   41.   In justifiable reliance on the aforementioned representations of Defendants,

2   and each of them, Plaintiff agreed to videotape their intimate relations, and ultimately,

3   because of Shrider's representation that the Videotape was stolen, Plaintiff sued TMZ,

4   and refrained from suing Shrider.

5   42.   As a direct and proximate result of the aforementioned fraudulent

6   misrepresentations by Shrider, as alleged herein, Plaintiff has been damaged in an

7   amount that has yet to be ascertained, including consequential and incidental damages,

8   but which is at least Twenty Million Dollars ($20,000,000), together with interest

9   thereon at the legal rate.  When Plaintiff ascertains the exact amount of said damages, he

10  will seek leave of Court to amend this Complaint to set forth said amount.

11  43.   The aforementioned acts and omissions, among others, of Shrider were done

12  intentionally or with a conscious disregard of Plaintiff's rights, and with the intent to vex,

13  injure or annoy Plaintiff such as to constitute oppression, fraud, or malice, thus entitling

14  him to exemplary and punitive damages in an amount appropriate to punish or set an

15  example of Shrider, and to deter such conduct in the future, which amount will be proved

16  at trial.

17

18  ## FOURTH CLAIM FOR RELIEF

19  **(For Invasion of Privacy – Against All Defendants)**

20  44.   Plaintiff adopts, realleges, and by this reference incorporates, Paragraphs 1

21  through 19, inclusive, and 35 through 41, inclusive, hereinabove.

22  45.   The broadcast/disclosure by Defendants, and each of them, of the images on

23  the Videotape, and the distribution of actual copies of the Videotape, is offensive and

24  objectionable to a reasonable person of ordinary sensibilities, including Plaintiff, in that

25  it reveals the private lovemaking of boyfriend and girlfriend.  No legitimate public

26  interest is served by revealing, discussing, broadcasting, disseminating, or distributing

27  the contents of the Videotape or the Videotape itself.

28  ///

–9–

46.     The aforementioned conduct on the part of Defendants, and each of them, constitutes a violation, infringement, and invasion of Plaintiff's right of privacy, under the United States Constitution, the California Constitution, and common law.

47.     As a direct and proximate result of the aforementioned acts by Defendants, and each of them, as alleged herein, Plaintiff has been damaged in an amount that has yet to be ascertained, including consequential and incidental damages, but which is at least Twenty Million Dollars ($20,000,000), together with interest thereon at the legal rate. When Plaintiff ascertains the exact amount of said damages, he will seek leave of Court to amend this Complaint to set forth said amount.

48.     The aforementioned acts, among others, of Defendants, and each of them, of which an officer, director and/or managing agent had advance knowledge and/or ratified said wrongful conduct, were done intentionally or with a conscious disregard of Plaintiff's rights, and with the intent to vex, injure or annoy Plaintiff such as to constitute oppression, fraud, or malice, thus entitling him to exemplary and punitive damages in an amount appropriate to punish or set an example of Defendants, and each of them, and to deter such conduct in the future, which amount will be proved at trial.

## FIFTH CLAIM FOR RELIEF

### (For Violation of Common Law Right of Publicity –

### Against All Defendants)

49.     Plaintiff adopts, realleges, and by this reference incorporates, Paragraphs 1 through 19, inclusive, and 35 through 41, inclusive, hereinabove.

50.     Plaintiff has worked diligently for several years, and has become a successful actor.

51.     As a result, Plaintiff has created a general acceptance and good will for his name and likeness, the effect of which was to create an absolute, incorporeal, and transferable property right with a substantial commercial value in the eyes of the public.

///

52. Accordingly, Plaintiff possesses a valuable right of publicity, a property right with substantial commercial value, which he has not agreed to transfer, in whole or in part, to Defendants, or any of them, for any purpose, at any time.

53. The aforementioned conduct on the part of Defendants, and each of them, constitutes a serious violation of Plaintiff's right of publicity, in that the appropriation by Defendants, and each of them, was for the purpose of promoting, advertising, and soliciting purchases of the Videotape, and for the purpose of obtaining substantial profits in connection therewith.

54. The appropriation was for Defendants' advantage, in that Plaintiff's name, voice, and likeness were used and intended by Defendants, and each of them, to create and enhance Defendants' pecuniary gain and profit resulting from the manufacture, distribution, dissemination, circulation, advertisement and/or other exploitation of the Videotape.

55. As a direct and proximate result of the aforementioned acts by Defendants, and each of them, as alleged herein, Plaintiff has been damaged in an amount that has yet to be ascertained, including consequential and incidental damages, but which is at least Twenty Million Dollars ($20,000,000), together with interest thereon at the legal rate. When Plaintiff ascertains the exact amount of said damages, he will seek leave of Court to amend this Complaint to set forth said amount.

56. As a direct and proximate result of the aforementioned acts by Defendants, and each of them, Defendants have earned profits from the exploitation of the Videotape, in an amount that has yet to be ascertained, but which is or will be in excess of Twenty Million Dollars ($20,000,000). Plaintiff is entitled to recover all profits earned by Defendants, and each of them, as a result of Defendants' unauthorized use of Plaintiff's name, voice, and likeness for commercial purposes.

57. The aforementioned acts, among others, of Defendants, and each of them, of which an officer, director and/or managing agent had advance knowledge and/or ratified said wrongful conduct, were done intentionally or with a conscious disregard of

1 Plaintiff's rights, and with the intent to vex, injure or annoy Plaintiff such as to constitute
2 oppression, fraud, or malice, thus entitling him to exemplary and punitive damages in an
3 amount appropriate to punish or set an example of Defendants, and each of them, and to
4 deter such conduct in the future, which amount will be proved at trial.

## SIXTH CLAIM FOR RELIEF

### (For Misappropriation of Name, Voice, And Likeness/Violation of
### Civil Code Section 3344 – Against All Defendants)

9      58.    Plaintiff adopts, realleges, and by this reference incorporates, Paragraphs 1
10 through 19, inclusive, 35 through 41, inclusive, and 50 through 52, hereinabove.

11     59.    The aforementioned conduct of Defendants, and each of them, constitutes a
12 violation of Section 3344 of the California Civil Code for unauthorized misappropriation
13 of Plaintiff's name, voice, and likeness for commercial purposes.

14     60.    As a direct and proximate result of the aforementioned acts by Defendants,
15 and each of them, as alleged herein, Plaintiff has been damaged in an amount that has yet
16 to be ascertained, including consequential and incidental damages, but which is at least
17 Twenty Million Dollars ($20,000,000), together with interest thereon at the legal rate.
18 When Plaintiff ascertains the exact amount of said damages, he will seek leave of Court
19 to amend this Complaint to set forth said amount.

20     61.    As a direct and proximate result of the aforementioned acts by Defendants,
21 and each of them, Defendants have earned and will earn profits in connection with their
22 use of Plaintiff's name, voice, and likeness, in an amount that has yet to be ascertained,
23 but which is or will be at least Twenty Million Dollars ($20,000,000), together with
24 interest thereon at the legal rate.  Plaintiff is entitled to recover all profits earned by
25 Defendants as a result of Defendants' unauthorized use of Plaintiff's name, voice, and
26 likeness for commercial purposes.

27     62.    As a further direct and proximate result of the aforementioned acts by
28 Defendants, and each of them, Plaintiff has been compelled to retain the services of an

1  attorney in order to prosecute his rights.  As a result, Plaintiff has incurred and will

2  continue to incur substantial attorneys' fees.  Plaintiff is further entitled to an award of

3  his attorneys' fees and costs incurred in connection with this litigation pursuant to

4  Section 3344 of the Civil Code.

5        63.      The aforementioned acts, among others, of Defendants, and each of them, of

6  which an officer, director and/or managing agent had advance knowledge and/or ratified

7  said wrongful conduct, were done intentionally or with a conscious disregard of

8  Plaintiff's rights, and with the intent to vex, injure or annoy Plaintiff, such as to

9  constitute oppression, fraud, or malice, thus entitling him to exemplary and punitive

10  damages in an amount appropriate to punish or set an example of Defendants, and each

11  of them, and to deter such conduct in the future, which amount will be proved at trial.

12

13                    **SEVENTH CLAIM FOR RELIEF**

14            **(For Unfair Competition – Against All Defendants)**

15        64.      Plaintiff adopts, realleges, and by this reference incorporates, Paragraphs 1

16  through 19, inclusive, 21 through 25, inclusive, 31 through 32, inclusive, 35 through 41

17  inclusive, 45 through 46, inclusive, 50 through 52, inclusive, and 59, hereinabove.

18        65.      The aforementioned acts of Defendants, and each of them, constitute unfair

19  competition under common law and the provisions of California Business and

20  Professions Code Section 17200.  Said acts constitute a pattern of unlawful activity that

21  was designed to and did perpetrate a fraud upon Plaintiff and many other consumers that

22  were and are similarly situated, and was otherwise unfair.

23        66.      As a direct and proximate result of the aforementioned acts, among others,

24  Defendants, and each of them, have received and continue to receive profits that

25  rightfully belong to Plaintiff.  Plaintiff is therefore entitled to the profits of Defendants,

26  and each of them, that have been and will be received as a result of the unlawful conduct

27  of Defendants, and each of them, which amount has yet to be ascertained.

28  ///

## EIGHTH CLAIM FOR RELIEF

### (For Temporary, Preliminary and Permanent Injunction –

### Against All Defendants)

67. Plaintiff adopts, realleges, and by this reference incorporates, Paragraphs 1 through 19, inclusive, 21 through 25, inclusive, 31 through 32, inclusive, 35 through 41 inclusive, 45 through 46, inclusive, 50 through 52, inclusive, 59, and 65, hereinabove.

68. The wrongful acts and conduct of Defendants, and each of them, constitute a serious and substantial violation of Plaintiff's rights under the laws of the State of California and of the United States.

69. Plaintiff is informed and believes and, based upon such information and belief, alleges that Defendants' conduct, including, but not limited to, the foregoing, has caused and will cause irreparable injury to Plaintiff, which injury will continue as long as Defendants are allowed to distribute, disseminate, circulate, advertise, market, broadcast, make copies of, and/or otherwise exploit the Videotape. Such injury will be severe, substantial and continuing, and cannot be reasonably or adequately measured or compensated for by money damages alone.

70. Unless Defendants, and each of them, are preliminarily and permanently enjoined from further distribution, dissemination, circulation, advertising, marketing, broadcasting, copying and/or other exploitation of the Videotape, Plaintiff will be irreparably and permanently injured, in the event that he is unable to stop the dissemination of the Videotape.

## NINTH CLAIM FOR RELIEF

### (For An Accounting – Against Defendant Shrider Only)

71. Plaintiff adopts, realleges, and by this reference incorporates, Paragraphs 1 through 19, inclusive, hereinabove.

72. Defendant Shrider claims to be a co-author of the Videotape. In the event that Shrider is adjudged to be a co-author, by exploiting the Videotape, Shrider has

– 14 –

undertaken the responsibility and duty to collect and report her earnings in connection therewith to Plaintiff.

73.    The extent and nature of the failure of Shrider to account to Plaintiff for money due to Plaintiff, as well as the full extent of the acts of Shrider, as alleged by Plaintiff herein, are not known and cannot be ascertained by Plaintiff without an accounting.

74.    An accounting of all of the books and records that are maintained by Shrider in connection with her exploitation of the Videotape is necessary in order for Plaintiff to ascertain the correct amount of money that is owed to him.

## TENTH CLAIM FOR RELIEF
### (For Intentional Infliction Of Emotional Distress –
### Against Defendant Shrider Only)

75.    Plaintiff adopts, realleges, and by this reference incorporates, Paragraphs 1 through 19, inclusive, hereinabove.

76.    In or about June of 2008, Plaintiff, who had been involved in a romantic relationship with Shrider, ended his relationship with her. Commencing at that time, Shrider, who is approximately 5'5" tall, and 110 pounds, engaged in the following acts against Plaintiff, who is 2'8" tall, and 40 pounds:

(a)    Shrider refused to move out of Plaintiff's home until he gave her money to move; when he gave her $3,000 to move, she cashed the check, kept the money, and still refused to get out.

(b)    After refusing to move out of Plaintiff's home, Shrider continued to come into his bedroom, uninvited, to harass and start arguments with Plaintiff. As a result, Plaintiff had to put a lock on his bedroom door.

(c)    During numerous arguments, when Plaintiff attempted to close the door to his room, Shrider blocked the door with her body.

///

(d)     During one or more arguments, when Plaintiff attempted to walk away from her, Shrider grabbed him very forcefully by the arm, held him against his will, and did not let him get away from her.

(e)     On many occasions, Plaintiff, in fear of his safety, did not want to go into his own home without having someone else accompanying him. On one such evening, he asked his manager to accompany him into his house. As soon as Plaintiff entered his bedroom, he locked the door, and moved his scooter in front of the door. He then told his manager that it was alright to go home. As soon as Plaintiff's manager left the house, Shrider picked the lock, pushed the (100 lb.) scooter out of the way, and locked Plaintiff in the room with her. Plaintiff was very afraid, and called his manager to come back to the house.

(f)     When Plaintiff's manager returned, Shrider was sitting behind the door holding Plaintiff against his will. Plaintiff's manager ran to the back of the house, and broke into Plaintiff's room through the sliding glass door. When Shrider say him, she threw Plaintiff to the floor, and then backed away, ultimately sitting down on the bed.

(g)     At that point, Plaintiff and his manager started to pack some of Plaintiff's clothes so that he could leave the house and stay at his manager's house. As they were packing, they noticed that Plaintiff's medication was missing. Shrider first denied knowing where the medication was, at which point Plaintiff's manager called the police.

(h)     Once the police were on their way to the house, Shrider took the medication from her purse, threw it on the bed, and announced that they could never prove that she had taken the medication or had hidden it.

(i)     When the police arrived, although Shrider lied to them about attacking Plaintiff, throwing him to the floor, and taking his medication, the police nevertheless asked Plaintiff if he wanted to press charges; assuming that this behavior by Plaintiff would not continue, Plaintiff declined to press charges.

1         (j)    At other times, Shrider has stood outside Plaintiff's bedroom door,

2 knocking loudly and incessantly, while calling Plaintiff derogatory and hurtful names,

3 until he opened the door.

4         (k)    On these occasions in which Plaintiff has succumbed to Plaintiff's

5 harassment by unlocking his bedroom door, Shrider has forced the door open, blocked

6 the door from being closed, and pushed her way into the room, always taking advantage

7 of Plaintiff's stature, and simply overpowering him.

8         (l)    The only way that Plaintiff has been able to get Shrider out of his

9 room has been to pick up his video camera and to start recording her hysterics.

10         (m)    However, on one such occasion, Plaintiff left his bedroom and, as

11 Plaintiff was attempting to lock his door, she burst back into his room, took his camera,

12 ran to her own room, locked her door, and called her attorney.

13         (n)    After Shrider's attorney told her to return the camera to Plaintiff, she

14 came back to Plaintiff's room with Plaintiff's video camera and her own camera.  She

15 handed the video camera back to Plaintiff, took a photograph of the exchange and, as

16 soon as the photograph was taken, grabbed the video camera out of Plaintiff's hands, and

17 threw it accross the room, destroying it.

18     77.    All of the aforementioned acts by Shrider were calculated and intended by

19 her to cause Plaintiff severe emotional distress.

20     78.    As a direct and proximate result of the aforementioned acts, among others,

21 by Shrider, as alleged herein, Plaintiff has suffered severe emotional distress, the

22 monetary damages for which have yet to be ascertained, but are in excess of Twenty

23 Million Dollars ($20,000,000), together with interest thereon at the legal rate.  When

24 Plaintiff ascertains the exact amount of said damages, he will seek leave of Court to

25 amend this Complaint to set forth said amount.

26     79.    The aforementioned acts and omissions, among others, of Shrider were done

27 intentionally or with a conscious disregard of Plaintiff's rights, and with the intent to vex,

28 injure or annoy Plaintiff such as to constitute oppression, fraud, or malice, thus entitling

1  him to exemplary and punitive damages in an amount appropriate to punish or set an

2  example of Shrider, and to deter such conduct in the future, which amount will be proved

3  at trial.

4

5  ## ELEVENTH CLAIM FOR RELIEF

6  ### (For Battery – Against Defendant Shrider Only)

7      80.    Plaintiff adopts, realleges, and by this reference incorporates, Paragraphs 1

8  through 19, inclusive, and 76, hereinabove.

9      81.    The aforementioned acts of Shrider, among others, were committed

10  intentionally and without the permission of Plaintiff.

11      82.    As a direct and proximate result of the foregoing acts, among others, by

12  Shrider, Plaintiff was injured in his health, strength and activity, sustaining injury to his

13  body, and shock and injury to his nervous systems and person, all of which injuries have

14  caused, and continue to cause, Plaintiff great mental, physical, and nervous pain and

15  suffering, the monetary damages for which have yet to be ascertained, but are in excess

16  of Twenty Million Dollars ($20,000,000.00).

17      83.    The aforementioned acts and omissions, among others, of Shrider were done

18  intentionally or with a conscious disregard of Plaintiff's rights, and with the intent to vex,

19  injure or annoy Plaintiff such as to constitute oppression, fraud, or malice, thus entitling

20  him to exemplary and punitive damages in an amount appropriate to punish or set an

21  example of Shrider, and to deter such conduct in the future, which amount will be proved

22  at trial.

23

24  ## TWELTH CLAIM FOR RELIEF

25  ### (For Negligence – Against Defendant Shrider Only)

26      84.    Plaintiff adopts, realleges, and by this reference incorporates, Paragraphs 1

27  through 19, inclusive, and 76, hereinabove.

28  ///

1    85.    Shrider owed Plaintiff a duty to exercise due care toward Plaintiff.

2    86.    Shrider knew, or should have known, that her failure to exercise due care
3    would cause Plaintiff bodily injury and severe emotional distress.

4    87.    Nevertheless, Defendants, and each of them, negligently engaged in the
5    aforementioned acts.

6    88.    As a direct and proximate result of the aforementioned acts, among others,
7    by Shrider, as alleged herein, Plaintiff has suffered bodily injury and severe emotional
8    distress, the monetary damages for which have yet to be ascertained, but are in excess of
9    Twenty Million Dollars ($20,000,000), together with interest thereon at the legal rate.
10   When Plaintiff ascertains the exact amount of said damages, he will seek leave of Court
11   to amend this Complaint to set forth said amount.

13   WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them,
14   as follows:

16   **AS TO THE FIRST CLAIM FOR RELIEF:**

17   1.    For compensatory damages in an amount to be proved at trial, which
18   Plaintiff has sustained as a consequence of Defendants' infringement of said copyright,
19   which damages are in excess of $20 Million, together with interest thereon at the
20   maximum legal rate.

21   2.    For an accounting by Defendants, and each of them, of all gains, profits and
22   advantages derived by them, based upon their infringement of Plaintiff's copyright;

23   3.    For all profits earned by Defendants, and each of them, that are attributable
24   to the infringement of the copyright of the Videotape, which profits Plaintiff expects to
25   be in excess of $20 Million.

26   4.    For an Order requiring Defendants, and each of them, to deliver up to be
27   impounded during the pendency of this action, or to be destroyed, all copies of the
28   Videotape, including any and all advertising or promotional material, posters, or

1 packaging which refer to the Videotape, any portions thereof, and any and all still
2 photographs taken therefrom.

3      5.    Alternatively, statutory damages for a <u>willful</u> infringement, in accordance
4 with 17 U.S.C. Section 504(c)(2).

5      6.    For reasonable attorneys' fees in an amount to be proved at trial, in
6 accordance with 17 U.S.C. Section 505;

7

8 **AS TO THE SECOND CLAIM FOR RELIEF:**

9      7.    For compensatory damages in an amount to be proved at trial, which
10 Plaintiff has sustained as a consequence of Defendants' violation of the Lanham Act,
11 which damages are in excess of $20 Million, together with interest thereon at the
12 maximum legal rate;

13      8.    For an accounting by Defendants, and each of them, of all gains, profits and
14 advantages derived by them, based upon their violation of the Lanham Act.

15      9.    For all profits earned by Defendants, and each of them, that are attributable
16 to the violation of the Lanham Act, which profits Plaintiff expects to be in excess of $20
17 Million.

18

19 **AS TO THE THIRD CLAIM FOR RELIEF:**

20      10.    For compensatory damages in an amount to be proved at trial, which
21 damages are in excess of $20 Million, together with interest thereon at the maximum
22 legal rate.

23      11.    For exemplary and punitive damages in an amount sufficient to punish or
24 set an example of Defendants, and each of them, which amount will be proved at trial.

25

26 **AS TO THE FOURTH CLAIM FOR RELIEF:**

27      12.    For compensatory damages in an amount to be proved at trial, which
28 Plaintiff has sustained as a consequence of Defendants' invasion of Plaintiff's privacy,

1 which damages are in excess of $20 Million, together with interest thereon at the
2 maximum legal rate.

3     13. For exemplary and punitive damages in an amount sufficient to punish or
4 set an example of Defendants, and each of them, which amount will be proved at trial.

5

6 **AS TO THE FIFTH CLAIM FOR RELIEF:**

7     14. For compensatory damages in an amount to be proved at trial, which
8 Plaintiff has sustained as a consequence of Defendants' violation of Plaintiff's right of
9 publicity, which damages are in excess of $20 Million, together with interest thereon at
10 the maximum legal rate;

11     15. For an accounting by Defendants, and each of them, of all gains, profits and
12 advantages derived by them, based upon their violation of Plaintiff's right of publicity;

13     16. For all profits earned by Defendants, and each of them, that are attributable
14 to their violation of Plaintiff's right of publicity, which profits Plaintiff expects to be in
15 excess of $20 Million.

16     17. For exemplary and punitive damages in an amount sufficient to punish or
17 set an example of Defendants, and each of them, which amount will be proved at trial.

18

19 **AS TO THE SIXTH CLAIM FOR RELIEF:**

20     18. For compensatory damages in an amount to be proved at trial, which
21 Plaintiff has sustained as a consequence of Defendants' violation of Plaintiff's statutory
22 rights, which damages are in excess of $20 Million, together with interest thereon at the
23 maximum legal rate;

24     19. For an accounting by Defendants, and each of them, of all gains, profits and
25 advantages derived by them, based upon their violation of Civil Code Section 3344;

26     20. For all profits earned by Defendants, and each of them, that are attributable
27 to their violation of Plaintiff's statutory rights, which profits Plaintiff expects to be in
28 excess of $20 Million.

1   21. For reasonable attorneys' fees in an amount to be proved at trial, in
2   accordance with Civil Code Section 3344;

3   22. For exemplary and punitive damages in an amount sufficient to punish or
4   set an example of Defendants, and each of them, which amount will be proved at trial.

5

6   **AS TO THE SEVENTH CLAIM FOR RELIEF:**

7   23. For an accounting by Defendants, and each of them, of all gains, profits and
8   advantages derived by them, based upon their unfair business practices;

9   24. For all profits earned by Defendants, and each of them, that are attributable
10  to their unfair business practices, which profits Plaintiff expects to be in excess of $20
11  Million;

12

13  **AS TO THE EIGHTH CLAIM FOR RELIEF:**

14  25. For an accounting of all books and records maintained by Shrider in
15  connection with her exploitation of the Videotape.

16

17  **AS TO THE NINTH CLAIM FOR RELIEF:**

18  26. For a temporary, preliminary and permanent injunction precluding
19  Defendants, and each of them, and their agents, servants, employees, subsidiaries,
20  officers, directors, representatives, attorneys, successors, and assigns from:

21  (a) Selling, attempting to sell, causing to be sold, permitting any other
22  individual or entity to sell, entering into any license or other agreement to exploit,
23  copying, reproducing, preparing derivative works of, publishing, broadcasting,
24  disseminating, distributing, circulating, displaying, describing the contents of,
25  promoting, marketing, and advertising, any portion of the Videotape;

26  (b) Selling, attempting to sell, causing to be sold, permitting any other
27  individual or entity to sell, entering into any license or other agreement to exploit,
28  copying, reproducing, preparing derivative works of, publishing, broadcasting,

1  disseminating, distributing, circulating, displaying, describing the contents of,
2  promoting, marketing, and advertising, still photographs from the Videotape, captured
3  images from the Videotape displayed on the Internet and/or any downloaded hard copies
4  of images from the Videotape;
5        (c)    Selling, attempting to sell, causing to be sold, permitting any other
6  individual or entity to sell, entering into any license or other agreement to exploit,
7  copying, reproducing, preparing derivative works of, publishing, broadcasting,
8  disseminating, distributing, circulating, displaying, describing the contents of,
9  promoting, marketing, and advertising, any advertising, promotional material, or
10 packaging referring to the Videotape;
11       (d)    Taking orders for copies of the Videotape, any portions thereof, or
12 any still photographs therefrom, through the Internet or any other means;
13       (e)    Shipping copies of the Videotape, any portions thereof, or any still
14 photographs therefrom, to those purchasers who already have placed orders for copies of
15 the Videotape, or to anyone else and;
16       (f)    Using Plaintiff's name, voice, likeness, or identity in any manner, on
17 or in products, merchandise, goods, promotional materials or websites, or for purposes of
18 advertising or selling, or soliciting purchases of, products, merchandise, goods, services,
19 or subscriptions to websites.
20
21 **<u>AS TO THE TENTH CLAIM FOR RELIEF</u>:**
22     27.    For compensatory damages in an amount to be proved at trial, which
23 damages are in excess of $20 Million, together with interest thereon at the maximum
24 legal rate.
25     28.    For exemplary and punitive damages in an amount sufficient to punish or
26 set an example of Defendants, and each of them, which amount will be proved at trial.
27 ///
28 ///

## AS TO THE ELEVENTH CLAIM FOR RELIEF:

29.    For compensatory damages in an amount to be proved at trial, which damages are in excess of $20 Million, together with interest thereon at the maximum legal rate.

30.    For exemplary and punitive damages in an amount sufficient to punish or set an example of Defendants, and each of them, which amount will be proved at trial.

## AS TO THE TWELFTH CLAIM FOR RELIEF:

31.    For compensatory damages in an amount to be proved at trial, which damages are in excess of $20 Million, together with interest thereon at the maximum legal rate.

## AS TO ALL CLAIMS FOR RELIEF:

32.    For costs of suit herein incurred; and

33.    For such other and further relief as the Court deems just and proper.

DATED: July 30, 2008

Edwin F. McPherson
Tracy B. Rane
**McPHERSON & ASSOCIATES**


By: _____
    EDWIN F. McPHERSON
    Attorneys for Plaintiff
    VERNE TROYER

## DEMAND FOR JURY TRIAL

Plaintiff VERNE TROYER hereby demands a trial by jury in this action.

DATED: July 30, 2008

Edwin F. McPherson
Tracy B. Rane
**McPHERSON & ASSOCIATES**

By: _____
EDWIN F. McPHERSON
Attorneys for Plaintiff
VERNE TROYER